NOT DESIGNATED FOR PUBLICATION

No. 118,266

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THOMAS JAMES NEWMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; CHARLES M. HART, judge. Opinion filed September 28, 2018.
Sentence vacated and case remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Phyllis K. Webster*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., BRUNS and GARDNER, JJ.

PER CURIAM:  Thomas James Newman appeals the sentence imposed by the district court after he pleaded no contest to criminal threat and domestic battery. On appeal, Newman contends that the district court erroneously calculated his criminal history score because it classified his 10 prior federal convictions as person felonies. He also contends that the district court improperly ordered him to pay $35 in restitution to the Butler County Attorney. Applying K.S.A. 2017 Supp. 21-6811(e), we conclude that Newman's sentence must be vacated because the federal statute under which Newman was convicted is broader than the comparable Kansas crime. Likewise, we conclude that

1

the district court erred in ordering Newman to pay restitution to the Butler County Attorney. Thus, we vacate Newman's sentence and remand for resentencing.

FACTS

Based on a plea agreement, Newman pleaded no contest to criminal threat, a severity level 9 person felony, and domestic battery, a class B person misdemeanor for acts committed on December 25, 2015. Before sentencing, a presentence investigation (PSI) report was prepared. The PSI report revealed that Newman had 10 prior federal convictions on December 18, 1997, for aiding and abetting in the possession of an unregistered destructive device in violation of 26 U.S.C. § 5861(d) (1994). Because the PSI report reflected that the unregistered destructive devices were pipe bombs, the prior federal convictions were categorized as person felonies in Newman's criminal history. As a result, the PSI report gave him a criminal history score of A.

After receiving a copy of the PSI report, Newman objected to the criminal history score reflected in the report. He argued that his prior convictions should be classified as nonperson felonies. In response, the State argued that the federal statute under which Newman had been convicted—26 U.S.C. § 5861(d)—was sufficiently similar to K.S.A. 21-3731, which classified the possession of a pipe bomb as a person felony. (We note that the 2011 Kansas Legislature recodified K.S.A. 21-3731 as K.S.A. 21-5814.) Thus, the State maintained that Newman's prior federal convictions should be classified as person felonies under K.S.A. 2015 Supp. 21-6811(e)(4).

In support of its argument, the State attached to its response the federal Indictment that set forth 10 counts—each of which specifically identified the destructive device in question to be a pipe bomb. The State also attached an Amended Judgment in a Criminal Case entered by United States District Judge Daniel B. Sparr on August 28, 1998, which state that Newman pleaded guilty to each of the 10 counts set forth in the indictment. The

2

documents attached to the Amended Judgment reflect that the federal district court sentenced Newman to concurrent sentences of 36 months in the custody of the United States Bureau of Prisons.

On August 10, 2017, the district court held Newman's sentencing hearing in this case. The district court first considered Newman's objection to his criminal history score. After reviewing the federal Indictment and Amended Judgment, the district court overruled Newman's objection to his criminal history score. As a result, the district court found that Newman had a criminal history score of A and sentenced him to a mitigated controlling sentence of 15 months in prison and 12 months' postrelease supervision. The district court gave Newman 184 days of jail credit, which resulted in his sentence effectively beginning on February 7, 2017. The district court also imposed $35 of restitution payable to the Butler County Attorney for reimbursement of the expense of obtaining the federal criminal records for preparation of the PSI report.

ANALYSIS

We note at the outset that Newman does not challenge his convictions. Instead, he simply challenges his criminal history score and the imposition of restitution. We also note that it appears from the record that Newman has likely served his prison sentence. Even so, given that he is still on postrelease supervision and under an order to pay restitution, we will address the issues presented on their merits.

*Calculation of Criminal History Score*

Newman contends that the district court erred in scoring his prior federal convictions as person felonies. Classification of prior offenses for criminal history purposes involves interpretation of the Kansas Sentencing Guidelines Act, and statutory interpretation is a question of law subject to unlimited review. *State v. Keel*, 302 Kan.

3

560, 571-72, 357 P.3d 251 (2015). In calculating a defendant's criminal history score, courts consider all prior felony convictions and adjudications as well as certain misdemeanor convictions and adjudications, including out-of-state convictions and adjudications. K.S.A. 2017 Supp. 21-6810(a).

Under K.S.A. 2017 Supp. 21-6811(e)(4), federal convictions are considered to be out-of-state convictions. An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. K.S.A. 2017 Supp. 21-6811(e)(2). Yet in deciding whether to classify a crime as person or nonperson, district courts must comply with the provisions of K.S.A. 2017 Supp. 21-6811(e)(3), which provides:

> "The state of Kansas shall classify the [prior] crime as person or nonperson. In designating a crime as person or nonperson, *comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed* shall be referred to. If the state of Kansas *does not have a comparable offense* in effect on the date the current crime of conviction was committed, *the out-of-state crime shall be classified as a nonperson crime*." (Emphases added.)

Earlier this year, the Kansas Supreme Court interpreted K.S.A. 2017 Supp. 21-6811(e) in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018). Although the *Wetrich* opinion was based on statutory interpretation rather than on constitutional grounds, our Supreme Court borrowed the "identical-or-narrower rule" set forth in the United States Supreme Court's opinion in *Mathis v. United States*, 579 U.S. ___, 136 S. Ct. 2243, 2256, 195 L. Ed. 2d 604 (2016). See *Wetrich*, 307 Kan. at 558. As a result, an out-of-state conviction may not be considered to be a "comparable offense" under K.S.A. 2017 Supp. 21-6811(e)(3) unless "the elements of the out-of-state crime [are] identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." *Wetrich*, 307 Kan. at 562.

4

It is important to note that *Wetrich* was decided while the present appeal was pending. As such, the district court did not have the benefit of reviewing the *Wetrich* opinion before issuing its ruling on Newman's objection to his criminal history. Instead, the district court found itself in the position of trying to piece together the various holdings of cases from the United States Supreme Court, the Kansas Supreme Court, and the Kansas Court of Appeals relating to the classification of crimes for determining a defendant's criminal history score.

We also recognize that the documents from federal court show that Newman pleaded guilty to Counts 1-10 of the Indictment that explicitly alleged in each count that he possessed "a pipe bomb with an attached fuse" in violation of 26 U.S.C. § 5861. Moreover, we recognize that K.S.A. 22-3209(1) provides that a guilty plea "is admission of the truth of the charge and every material fact alleged therein." Even so, based on our reading of *Wetrich*, neither appellate courts nor sentencing courts are permitted to look to documents such as the federal Indictment to determine whether an out-of-state offense is comparable to a Kansas offense. Instead, we must look to the language used in the relevant out-of-state and Kansas statutes.

Here, the parties agree that the most similar Kansas crime to 26 U.S.C. § 5861 in effect when Newman committed his current crimes was K.S.A. 2015 Supp. 21-5814. This Kansas statute regulates the possession, manufacturing, or transporting of "commercial explosives," specifically including pipe bombs. Even so, as the following comparison shows, the elements of the federal statute are broader than those in the Kansas statute:

| K.S.A. 2015 Supp. 21-5814 states: | 26 U.S.C. § 5861 provides: |
|---|---|
| "(a) Criminal use of an explosive is:<br><br>    (1) Possessing, manufacturing or transporting a commercial explosive, whether or not a person | "It shall be unlawful for any person—<br><br>    . . . .<br><br>    "(d) to receive or possess a firearm which is not registered to him in the |

5

knows or has reason to know it is a commercial explosive.

. . . .

"(c) As used in:

. . . .

(2) this section, 'commercial explosive' includes chemical compounds that form an explosive; a combination of chemicals, compounds or materials, including, but not limited to, the presence of an acid, a base, dry ice or aluminum foil, that are placed in a container for the purpose of generating a gas or gases to cause a mechanical failure, rupture or bursting of the container; incendiary or explosive material, liquid or solid; detonator; blasting cap; military explosive fuse assembly; squib; electric match or functional improvised fuse assembly; or any completed explosive device commonly known as a *pipe bomb* or a molotov cocktail." (Emphasis added.)

National Firearms Registration and Transfer Record."

## 26 U.S.C. § 5845 (1994) provides:

"For the purpose of this chapter—

"(a) Firearm.—The term 'firearm' means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) *a destructive device*. The term 'firearm' shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

. . . .

"(f) Destructive device—The term 'destructive device' means (1) any explosive, incendiary, or poison gas (A) *bomb*, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce,

6

| | (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10 of the United States Code; or any other device which the Secretary finds is not likely to be used as a weapon, or is an antique or is a rifle which the owner intends to use solely for sporting purposes." (Emphases added.) |
|---|---|

Certainly, the Kansas and federal statutes are similar in that they both regulate the possession of explosives—including pipe bombs. Yet the federal statute is neither identical to nor narrower than K.S.A. 2015 Supp. 21-5814. This is because 26 U.S.C. § 5861(d) regulates many items—such as shotguns of a certain length, rifles of a certain length, machine guns, and silencers—that are not regulated by K.S.A. 2015 Supp. 21-

5814. In Kansas, possession of silencers are regulated by K.S.A. 2015 Supp. 21-6301(a)(4) and possession of sawed-off shotguns and machine guns are regulated by K.S.A. 2015 Supp. 21-6301(a)(5). Unlike K.S.A. 2015 Supp. 21-5814, which provides that possession of explosives—such as pipe bombs—is a person felony, K.S.A. 2015 Supp. 21-6301(b) provides that the possession of silencers, sawed-off shotguns, and machine guns are nonperson felonies.

We, therefore, conclude that Newman's federal convictions are not "comparable offenses"—as defined in *Wetrich*—to K.S.A. 2015 Supp. 21-5814. Although we appreciate the State's argument to the contrary, both this court and the district court are duty bound to follow the holding in *Wetrich* absent some indication that our Supreme Court is departing from its previous position or the Kansas Legislature decides to amend K.S.A. 2017 Supp. 21-6811. See *State v. Ruiz*, 51 Kan. App. 2d 212, 233, 343 P.3d 544 (2015). Accordingly, we remand this case to the district court for resentencing. In doing so, the district court should classify Newman's prior federal convictions under 26 U.S.C. § 5861 as nonperson felonies in determining his criminal history score.

*Imposition of Restitution*

Newman also contends that the district court erred in imposing $35 in restitution at sentencing. Specifically, Newman challenges the requirement that he reimburse the Butler County Attorney for the expenses incurred in obtaining the federal court documents that were necessary to establish Newman's criminal history. In response, the State recognizes that this is not a traditional restitution case. In fact, as the State points out, it did not request restitution from the district court. Instead, it requested reimbursement of expenses and the district court decided to include it in the journal entry as restitution.

8

Our review of questions involving the interpretation of restitution statutes is unlimited. *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016). K.S.A. 2017 Supp. 21-6604(b)(1) provides that the district court "shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable." Although the statute does not say so on its face, our Supreme Court has defined "restitution" to mean compensation to a victim. See *State v. Dexter*, 276 Kan. 909, 912, 80 P.3d 1125 (2003).

Because Butler County Attorney was not the victim of Newman's crimes, we do not find restitution to be applicable in this case. As such, the district court erred in imposing $35 as restitution. Newman recognizes that the district court may still be able to assess the $35 as costs. Thus, we vacate the order of restitution and remand to the district court the issue of whether the $35 should be assessed as costs.

We, therefore, vacate Newman's sentence—including the order to pay restitution—and remand this case to the district court for resentencing.