12 Kan. App. 2d 680 (1988)
753 P.2d 1302
SUSAN B. ALLEN MEMORIAL HOSPITAL, Appellee,
v.
BOARD OF COUNTY COMMISSIONERS OF BUTLER COUNTY, KANSAS, Appellant.
No. 61,049
Court of Appeals of Kansas.
Opinion filed May 5, 1988.
Norman G. Manley and David A. Ricke, of Davis & Manley Lawyers, of El Dorado, for the appellant.
Randall J. Pankratz, of Thomas A. Adrian, P.A., of Newton, for the appellees.
Before BRAZIL, P.J., REES and SIX, JJ.
SIX, J.:
Defendant-appellant Board of County Commissioners of Butler County, Kansas, (County) appeals from the district court's ruling granting judgment for plaintiff-appellee Susan B. Allen Memorial Hospital (Hospital). The Hospital was awarded $1,199.40 plus interest and costs for the medical bill of Robert L. Welch. Welch was taken to the hospital for medical treatment while in the purported protective custody of the Butler County Sheriff's Office. The trial court ruled that the County was responsible for Welch's medical expenses and entered judgment for the Hospital.
*681 We find no error and affirm.
The facts of this case, stipulated to by the parties, are as follows.
On the evening of February 28, 1985, officers of the Butler County Sheriffs Office responded to a call and found Robert L. Welch at the Stardust Motel in El Dorado, Kansas, passed out from intoxication. Welch had not paid his motel bill for a couple of days, so the officers, not knowing what to do with him, took him to the county jail.
During the night, Welch suffered an apparent seizure. The jailer at the sheriff's office summoned an ambulance which took Welch to the Hospital, where he was admitted at 7:43 a.m. on March 1, 1985. A Butler County Deputy Sheriff accompanied Welch in the ambulance.
The services rendered by the Hospital for Welch were reasonable and necessary, and the charges for those services totaled $1,199.40. Welch left the Hospital after he recovered, but did not return to the county jail. The Hospital has been unable to collect for those services it provided for Welch, who is indigent.
Welch was never charged with any crime and was free to leave the jail if he so desired. There is no evidence that the condition for which Welch was treated was brought about by virtue of his "arrest or custody." Although the phrase "arrest or custody" was in the stipulation, Welch was never arrested.
The County stipulated that it is the Butler County Sheriff's Office's common practice to accept homeless transients and provide them with food and temporary shelter. The Hospital stipulated that indigent patients are normally seen and treated by the hospital regardless of the patients' financial means and regardless of whether they were in the custody of a law enforcement agency.
The trial court ruled that the County was responsible for Welch's medical expenses and entered judgment for the Hospital.
The question for our review is whether under the facts of this case Welch was within the custody of the County to the extent necessary to obligate the County to provide and pay for medical treatment.
The law in Kansas is clear that "a sheriff has a duty to furnish *682 medical attention to a prisoner in his custody who is in need thereof, at the county's expense if the prisoner is indigent and no other source of funds is available." Mt. Carmel Medical Center v. Board of County Commissioners, 1 Kan. App.2d 374, 378, 566 P.2d 384 (1977); K.S.A. 1987 Supp. 19-4444. The County asserts that Welch was free to leave the jail whenever he wanted. Under the County's analysis, Welch was not sufficiently "in custody" to impose the burden of paying his medical bills because he was not actually a "prisoner."
K.S.A. 1987 Supp. 22-2202(9) defines custody as "the restraint of a person pursuant to an arrest or the order of a court or magistrate." K.S.A. 1987 Supp. 22-2202(4) defines arrest as "the taking of a person into custody in order that the person may be forthcoming to answer for the commission of a crime. The giving of a notice to appear is not an arrest."
However, the statutory definition of custody is not necessarily controlling. K.S.A. 22-2201(1). Another definition of custody is provided in State v. Louis, 240 Kan. 175, 727 P.2d 483 (1986):
"A person who has not been arrested is not in police custody unless there are significant restraints on his freedom of movement which are imposed by some law enforcement agency.'" 240 Kan. at 181 (quoting State v. Bohanan, 220 Kan. 121, Syl. ¶ 2, 551 P.2d 828 [1976]).
We conclude that this broader definition of custody is more appropriate under the facts and circumstances of this case and should be applied here. See Dodge City Med. Center v. Board of Gray County Comm'rs, 6 Kan. App.2d 731, 732-33, 634 P.2d 163 (1981).
The Hospital argues that it is clear that Welch was in the custody of the County. Although it is true that the Hospital would have treated Welch if he had somehow managed to arrive on his own, Welch did spend the night in the jail. He was accompanied by a deputy sheriff during the ambulance ride to the Hospital. The Hospital argues that Welch was surrounded by the same prison bars as anyone charged to the sheriffs custody.
On the other hand, the County contends that prison bars are not unlike the walls of any mission or shelter that Welch would have been taken to if such a facility were available. The County argues that the fact that Welch was surrounded by prison bars rather than other inebriates, as he would have been if placed in a *683 shelter or mission, is not determinative of its liability to the Hospital.
We conclude that the trial court did not err in accepting the Hospital's analysis. The trial court noted that it was somewhat untenable for the County to argue that Welch could be placed in "protective custody," and then suddenly, when something goes wrong and the County is going to have to pay for more than room and board, say, "[H]e's his own boss and can go whenever he wants." Nothing in the record indicates that Welch was formally released from the protective custody of the sheriffs office. The trial court also found that Welch was not free to leave "whenever" he wanted. Welch would only be released when the jailer was ready to let him go or when the jailer was not busy doing something else.
The County emphasizes the fact that Welch was not charged with a crime; consequently, the County argues Welch was not a "prisoner" in custody.
In Wesley Med. Center v. City of Wichita, 237 Kan. 807, 703 P.2d 818 (1985), the Supreme Court resolved a controversy between a county and a city as to which entity has the obligation to pay the medical expenses of a person arrested by the city's police for violation of a state law but who was taken to the hospital before being delivered to county officers. The Court determined that a number of Kansas statutes indicate a legislative policy that the liability for the care of a prisoner, including medical expenses, should be the responsibility of the governmental entity whose criminal statute was the basis for the arrest. Wesley, 237 Kan. at 814. The County was charged with the responsibility for payment of the medical expenses.
The County contends that the failure to charge Welch with a crime indicates that he is not a "prisoner" and, therefore, the County's custodial care of Welch did not rise to the level necessary to impose liability for his medical expenses as directed by Wesley. It is misleading to rely on the holding of Wesley in the resolution of this matter. In Wesley, the Supreme Court was faced with the question of which governmental entity should bear the medical expenses of a prisoner. In the case at hand, the liability for medical expenses is between a governmental entity and a private hospital. Wesley is not dispositive in this case.
*684 The County claims that the case at hand is also dissimilar from the facts of Dodge City Med. Center v. Board of Gray County Comm'rs, 6 Kan. App.2d 731. In the Dodge City Med. Center case, the plaintiff doctors were able to recover medical expenses from Gray County for services performed on an individual shot by police while he was committing a felony. This court stated: "Had he not been injured there is no question but that pursuant to duty the sheriff would have taken him to jail and not to the hospital." Dodge City Med. Center, 6 Kan. App.2d at 732. The County claims that the sheriff had no duty to incarcerate Welch or take him into custody and absent that duty it is exonerated from liability.
We disagree with the County's analysis.
Under the Alcoholism and Intoxication Treatment Act, K.S.A. 65-4001 et seq., a law enforcement officer "may" take an individual into custody without a warrant if the officer has a reasonable belief that the individual is intoxicated or incapacitated by alcohol and is likely to be physically injured or to physically injure others. K.S.A. 65-4027(A). Once a law enforcement officer takes an intoxicated individual into custody, the officer "shall" transport such individual to a treatment facility for examination by a physician or psychologist. If a treatment facility is not available, the law enforcement officer may detain such individual in any other suitable place until the close of the first day the district court is open for the transaction of business. K.S.A. 65-4027(A); K.S.A. 65-4027(B). K.S.A. 65-4027(C) states:
"A taking into protective custody pursuant to this section is not to be construed as an arrest and no entry or other record shall be made to indicate the individual has been arrested or charged with a criminal offense." (Emphasis added.)
Welch was an individual "incapacitated by alcohol" (K.S.A. 1987 Supp. 65-4003[8]) and taken into protective custody by a "law enforcement officer." K.S.A. 1987 Supp. 65-4003(23).
Although the County now contends that the officers were going to allow Welch to "sleep it off" and release him the next morning, once Welch had been taken into custody as authorized by the Act, the officers had a statutory duty to take Welch to a treatment facility or other suitable place. The sheriff's office did not file a formal application with the district court as provided for by K.S.A. 65-4028. See K.S.A. 65-4027(B). However, this may *685 have been due to the fact that Welch became sick before the court's next business day. In any event, the intention of the officers is irrelevant to the resolution of this matter. The Act commands that law enforcement officers "shall" take an intoxicated individual, such as Welch, to a treatment facility or other suitable place once he is taken into custody.
Once the Butler County Sheriff Officers had taken Welch into "protective custody," they had a statutory duty to take him to a treatment facility or other suitable place. Once a county law enforcement officer places an indigent, intoxicated person in protective custody and transports that person to the county jail because an alcohol treatment facility is not available, the intoxicated person is "in custody" and the county is liable for any medical expenses that person may incur while "in custody." We hold that the trial court did not err in concluding that Welch was "in custody" and the County was liable to the Hospital for the payment of the charges incurred for services to Welch.
Affirmed.